William T. **WEED**, Plaintiff,

v.

**EAST TEXAS MOTOR FREIGHT LINES, INC., et al.**, Defendants.

Civ. A. No. CA 3–79–0881–G.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 20, 1983.

Charles L. Caperton, Dallas, Tex., for plaintiff.

Hershell L. Barnes, Jr., John F. McCarthy, Jr., Geo. E. Seay, Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, Tex., for East Texas Motor Freight.

James L. Hicks, Jr., Hicks, Gillespie & James, Dallas, Tex., for Teamsters Local Union 745.

L.N.D. Wells, Jr., Mullinax, Wells, Baab, Cloutman & Chapman, Dallas, Tex., for Intern. Broth. of Teamsters and Southern Conference of Teamsters.

## MEMORANDUM ORDER

FISH, District Judge.

This suit is before the court on motions for summary judgment by two of the four defendants. After reviewing the record, the court is of the opinion that the motions of defendants East Texas Motor Freight Lines, Inc. (ETMF) and Teamsters Local 745 should be granted as to the claims that ETMF breached the collective bargaining agreement and that Local 745 breached its duty of fair representation.

Plaintiff's complaint filed on July 9, 1979 charges that defendant ETMF breached its collective bargaining agreement with Local 745 by discharging plaintiff on August 10, 1977. Plaintiff also alleges that defendant Local 745 breached its duty to represent him fairly by the inadequate way it protested plaintiff's discharge under the contrac-

tual grievance procedure.[1] Plaintiff also asserts that all defendants conspired to discharge him, thus violating the Sherman Act, 15 U.S.C. §§ 1 and 2, by limiting the number and identity of those employed in the trucking industry in interstate commerce.

### Collateral Estoppel

As its first ground for summary judgment, ETMF asserts that the doctrine of collateral estoppel bars Weed's claim that ETMF breached the collective bargaining agreement with the union by discharging him without "just cause." ETMF discharged Weed on August 10, 1977, informing him by letter that he had repeatedly disrupted the company's work force, most recently on August 9 by spending part of his shift soliciting funds for a fellow employee. Weed protested his discharge through the grievance procedure prescribed by the collective bargaining agreement; a joint committee of labor and management denied the grievance in October, 1977.[2] Weed and others then filed charges against ETMF and Local 745 with the National Labor Relations Board (NLRB). While those charges were pending, Weed filed suit in this court on July 9, 1979. Several months later, on October 5, 1979, the administrative law judge of the NLRB issued extensive findings and conclusions, including the following:

It is beyond cavil that on August 9, Weed knowingly violated Respondent East Texas policy on solicitations in work areas on company time. Respondent East Texas became aware of the violation ... by the end of the discharge interview of August 10 .... The non-solicitation rule was valid. Weed has on previous occasions, as early as November 1975, been counseled and warned about such solicitations, abuse of time, and disrupting the work. Weed had received a number of

valid consultations and reprimands in the period immediately preceding August 9 .... Here there is substantial good cause for discharge. Accordingly it is concluded that Respondent East Texas did not discriminate against Weed by discharging him on August 10.

East Texas Motor Freight, JD–734–79 (1979) at 108.

Weed, with several other parties, filed exceptions to the ALJ's opinion with the NLRB. By agreement of the parties, the case before this court was postponed pending the decision of the NLRB. In opinion 262 NLRB 101 issued July 14, 1982, a three-member panel of the NLRB affirmed the rulings, findings and conclusions of the ALJ, modifying only several points unrelated to Weed's claim of discharge without just cause. The NLRB stated as follows:

We find the Respondent Company proved it would have discharged Weed even in the absence of the protected activity (posting notices on bulletin board) for which Weed received the unlawful warning cited in his discharge letter. We agree with the Administrative Law Judge's finding that there was a long history of problems with Weed because of his propensity to engage in discussion while he was working; that Weed was issued numerous lawful warnings, three of which were cited in his letter of discharge; and that on August 9, Weed knowingly violated Respondent Company's lawful policy on solicitation in work areas on company time. Accordingly we find that Respondent Company did not violate § 8(a)(3) of the Act by discharging Weed.

262 NLRB 101 (1982) at 7 n. 3. Weed did not seek reconsideration by the NLRB or

---

**1.** By order of February 14, 1980, this court dismissed plaintiff's breach of fair representation claims against defendant unions International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Southern Conference of Teamsters.

**2.** The committee decided that Weed had been properly warned by ETMF of previous disruptive acts and that the collection of money on company time was disruptive to the company's operation. *See* ALJ's opinion at 59.

judicial review by the Fifth Circuit of the NLRB's decision.[3]

■ Against this factual backdrop, the issue posed by ETMF's assertion of collateral estoppel is what effect, if any, the NLRB's findings and conclusions should have in this court. At the outset, it should be remembered that although collateral estoppel and res judicata are sometimes referred to interchangeably, the former doctrine is narrower than the latter.

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties [citations omitted].

*Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1889–90, n. 6, 72 L.Ed.2d 262 (1982). The Supreme Court has indicated that principles of res judicata and collateral estoppel may apply to administrative proceedings:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. (Citations omitted.)[4]

*United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). *Accord, Griffen v. Big Spring Ind. School Dist.,* 706 F.2d 645, 654 (1983) ("On some occasions findings made by administrative bod-

ies may be given collateral effect"). *See* generally Wright, Miller & Cooper, Federal Practice and Procedure § 4475 (1981). Several decisions have rested preclusions on NLRB findings in unfair labor practice proceedings, noting that the NLRB possesses a great deal of expertise in dealing with certain types of issues. *See* Wright, supra, n. 17 and cases cited therein. *See also Anthan v. Professional Air Traffic Controllers Org.,* 672 F.2d 706, 708–11 (8th Cir.1982).

■ To decide whether the NLRB's findings regarding Weed's discharge should have preclusive effect, the court must consider whether Weed had a "full and fair opportunity" to litigate before that tribunal the claim that his discharge was without just cause. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation." *Kremer,* above, 102 S.Ct. at 1897. *See also Griffen,* above, 706 F.2d at 654.

The record reflects that the administrative law judge in the NLRB proceeding conducted a 40-day trial at which the present parties were represented by the same counsel who have appeared for them in this court.[5] Nowhere in Weed's response to the motion for summary judgment does he dispute the fullness and fairness of the lengthy administrative proceeding. The transcript contains 7,237 pages, 2,000 from Weed's testimony alone. Ten witnesses testified regarding the warning letters, the discharge, and the alleged combination or conspiracy. The ALJ took great pains in his 115-page opinion to set forth the facts as garnered from this exten-

---

**3.** *See Pilot Freight Carriers v. Intl. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 495 F.Supp. 619, 638–39 (M.D.N.C.1980) (union's decision not to challenge NLRB's ruling rendered factual aspect of dispute res judicata). See also *McGuire v. Humble Oil & Refining Co.,* 355 F.2d 352, 357 (2d Cir.1965).

**4.** The Supreme Court quoted Judge Davis to the effect that "The Supreme Court made it plain that Congress intended the boards (and like administrative representatives) to be *the* fact-

finders within their contract area of competence, just as the Interstate Commerce Commission, the Federal Trade Commission, and the National Labor Relations Board are *the* fact-finders for other purposes." *Utah Construction,* 384 U.S. at 421 n. 18, 86 S.Ct. at 1559 n. 18.

**5.** Hershell L. Barnes, Jr. represented ETMF, while Charles Caperton presented the case of William T. Weed. Weed and counsel for the General Counsel of the Board prosecuted the case against ETMF and Teamsters Local Union No. 745, according to Barnes' affidavit.

sive in-court testimony.[6] Under these circumstances, the court is persuaded that Weed had a full and fair opportunity to litigate his claims before the NLRB. *See Painters Dist. Council No. 38, Brotherhood of Painters, Decorators and Paperhangers of America v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (5th Cir. 1969).

■ Although the conclusions of law of an administrative tribunal are not conclusive upon a court, the court may choose to preclude relitigation of factual issues by application of the doctrine of collateral estoppel. *See Mosher Steel Co. v. NLRB*, 568 F.2d 436, 440 (5th Cir.1978) (approving application of collateral estoppel to facts previously adjudicated in a labor dispute before an ALJ).

■ The test in the Fifth Circuit for the application of collateral estoppel consists of the following three elements:

(1) The issue to be concluded must be identical to that involved in the prior action; (2) in the prior action, the issue must have been "actually litigated"; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*International Assn of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 131–32 (5th Cir.1975).

All of these elements have been satisfied in the case at hand. The parties and counsel before this court are identical[7] to those before the NLRB; before the NLRB these parties had a full and fair opportunity, through a panoply of procedures and the availability of Fifth Circuit review, to contest the central issue here, whether ETMF discharged Weed for just cause or not. This determination was essential to the administrative holding, affirmed by the NLRB in its opinion, *supra* at 7, that ETMF did not discriminate against Weed by terminating his employment.[8]

Accordingly, this court concludes that collateral estoppel bars Weed from relitigating in this court the issue of whether he was unlawfully discharged in violation of the collective bargaining agreement. The ALJ specifically found that Weed had disrupted work at ETMF on several occasions, had received several valid warnings, and was finally discharged for going one step too far, soliciting from fellow workers "on the clock." For purposes of this case, the NLRB's affirmation of the ALJ's decision establishes that ETMF terminated Weed's employment for just cause.

In this instance, the administrative law judge acted as a tribunal with judicial functions, so that his findings of fact as to Weed's discharge, specifically affirmed by the NLRB, preclude relitigation. *See Kremer v. Chemical Construction Co.*, 456 U.S. 461, 102 S.Ct. 1883, 1899 n. 2, 72 L.Ed.2d 262 (1982). *See also West v. Standard Oil Co.*, 278 U.S. 200, 219, 49 S.Ct. 138, 143, 73 L.Ed. 265 (1929).

■ The fact that Weed simultaneously sought a remedy in two different forums (i.e., the NLRB and federal district court) does not prevent this court from applying collateral estoppel to previously litigated facts. See *Painters District Council, supra* 416 F.2d at 1085.

■ Weed's claims that ETMF breached the collective bargaining agreement and that Local 745 breached its duty of fair representation must both fail in the face of the NLRB's finding that ETMF discharged Weed for just cause. A discharge for just cause does not constitute a breach of the collective bargaining agreement. Al-

---

**6.** Compare *Griffen*, supra, 706 F.2d at 655, wherein the State Board chose to reverse, on the basis of a written record, the credibility determinations of a hearing examiner who had listened to live testimony and observed the demeanor of witnesses under direct and cross examination.

**7.** Under the decision of the Supreme Court in *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the parties no longer must be identical.

**8.** See the ALJ's opinion, East Texas Motor Freight, supra at 13 listing the issues, and his holding on 108.

though the suit against the employer rests on an alleged breach of the collective bargaining agreement and the suit against the union is for breach of the union's duty of fair representation, the two claims are inextricably interdependent. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981). To prevail against either the company or the union, a plaintiff must show both that the discharge violated the bargaining agreement *and* that the union breached its duty by not fairly representing the plaintiff during the ensuing proceedings protesting the discharge. On the present record, Weed cannot make these showings. For that reason, summary judgment must be granted, denying Weed relief against ETMF and Local 745, the only remaining defendants as to this claim.[9]

### The Statute of Limitations

■ There is yet another reason why the court must grant summary judgment in this case. In its recent decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that an employee's suit against both an employer and union pursuant to LMRA § 301 is governed by the six-month limitations period set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The legal theories and statutory bases are identical in *DelCostello* and the instant case. This court therefore holds that the decision in *DelCostello* controls the present case.

According to the undisputed facts in this case, ETMF discharged Weed on August 10, 1977. Weed protested his discharge through the grievance process, but the committee denied his grievance in October 1977. Approximately 22 months later, on July 9, 1979, Weed commenced the instant suit under § 301 of the Labor-Management Relations Act (LMRA), alleging that he had been discharged in violation of the applica-

ble labor contract and that the union had breached its duty of fair representation in processing his grievance.[10]

■ Weed argues that the holding of *DelCostello* may not be applied retroactively. *DelCostello* was one of two companion cases in the Supreme Court. An examination of the two cases reveals that in DelCostello's cause the court calculated the seven-month period referred to from the date of the joint committee's decision that DelCostello's grievance had no merit. DelCostello's case was remanded, however, to determine whether certain events had tolled the running of the statute. In the companion case of *Flowers*, the Supreme Court used the date that an arbitrator had ruled as the point at which the cause of action accrued. Since Flowers filed suit more than ten months after his cause of action had accrued, the Supreme Court reversed the judgment of the lower court, thus applying the six-month statute of limitations retroactively. *DelCostello*, 103 S.Ct. at 2294. From this result, it is clear that the court intended the lower courts to apply limitations retroactively. Recently, the court vacated judgment and remanded a similar case to the Fifth Circuit for further consideration in the light of *DelCostello*. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local No. 988 v. Edwards*, —— U.S. ——, 103 S.Ct. 3104, 77 L.Ed.2d 1360 (1983); 678 F.2d 1276 (5th Cir.1982).

■ In view of the Supreme Court's remand of the *DelCostello* cause for consideration of the plaintiff's tolling argument, Weed may yet contend that because he sought his remedy through the NLRB before the six-month limitations period had run, that the administrative proceedings should toll the running of the statute. However, a plaintiff may simultaneously pursue his remedies, as Weed did here, in an administrative forum and in a judicial forum; the jurisdiction of the former does

---

**9.** See footnote 1, *supra.*

**10.** The ALJ who presided over the subsequent trial ruled on October 5, 1979, and a three-mem-

ber panel of the NLRB affirmed the ALJ's decision with respect to Weed on July 14, 1982. *See* 262 NLRB 101 (1982).

not deprive the latter of jurisdiction. *See Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Just as an employer may not rely on unexhausted grievance and arbitration procedures as a defense to an employee's cause of action, it would be inequitable to hold that the pendency of administrative proceedings tolled the statute applicable to the judicial proceedings. *See Vaca*, supra at 185, 87 S.Ct. at 914.

■ An analogy to the parallel proceedings possible in employment discrimination suits through state administrative avenues and in federal court under the Civil Rights Act of 1871 is apt. Because state administrative exhaustion is not required to pursue a federal section 1983 action, pursuing state remedies does not toll the statute of limitations for section 1983 actions. *Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 2567 n. 17, 73 L.Ed.2d 172 (1982); *Griffen v. Big Spring Ind. School Dist.*, 706 F.2d 645, 649 (5th Cir.1983). Where the federal remedy is independent of other remedies, an administrative proceeding brought pursuant to the terms of a collective bargaining agreement has been held not to toll the limitations provision of a federal cause of action. *See Harris v. Norfolk & Western Railway*, 616 F.2d 377, 380 (8th Cir.1980). Weed's rights in this hybrid action contending employer's breach of the bargaining agreement as well as the union's breach of the duty of fair representation are exclusively federal, not subject to the concurrent jurisdiction of the NLRB. Where a right is federal in nature, the timely filing of a suit in a forum without jurisdiction over it does not interrupt the running of the limitations period. *See United States, etc. v. Maryland Casualty Co.*, 573 F.2d 245, 247 (5th Cir.1978). Weed's pursuit of his administrative remedy did not toll the statute of limitations applicable to the federal cause of action.

Consequently, this court is of the opinion that Weed's claims against ETMF for breach of the collective bargaining agreement and against Local 745 for breach of the duty of fair representation are time-barred because Weed did not initiate this action in federal court within six months after the cause of action accrued. The motions of ETMF and Local 745 for summary judgment based on the statute of limitations are GRANTED.

### Conclusion

In summary, the court concludes that Weed's claims that ETMF unlawfully discharged Weed, in violation of the collective bargaining agreement, and that Local 745 breached its duty of fair representation are barred both by the doctrine of collateral estoppel and by the applicable statute of limitations.

The only issue left for adjudication is Weed's antitrust claim that ETMF and the union entities conspired to discharge him in order to limit the number and identity of truck drivers engaged in interstate commerce. The parties are hereby ordered to appear on Thursday, September 29, 1983 at 1:30 p.m. for a pretrial conference regarding a discovery schedule and date for trial of this claim.

SO ORDERED.