**Richard GENTILVISO, Plaintiff,**

**v.**

**The NEW YORK PUBLIC LIBRARY, Astor, Lenox and Tilden Foundations: and District Council 37 of the American Federation of State, County and Municipal Employees, AFL–CIO, Defendants.**

**No. 84 Civ. 1323 (MJL).**

United States District Court, S.D. New York.

June 22, 1984.

John M. Martinico, New York City, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn by Joseph R. Knock, New York City, for defendant N.Y. Public Library.

Beverly Gross, New York City, for defendant District Council 37.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

### BACKGROUND

This is an action brought by plaintiff Richard Gentilviso to recover damages allegedly arising out of the termination of his employment with defendant New York Public Library, Astor, Lenox and Tilden Foundations (the "Library"). Plaintiff

makes three claims for relief.[1] His first claim against the Library, alleges that his termination was in violation of the collective bargaining agreement between the library and District Council 37, American Federation of State, County and Municipal Employees, AFL–CIO (the "Union"). Plaintiff's second cause of action, also against the Library, alleges that the Library's actions constituted an unfair labor practice under Section 8 of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 158. Plaintiff's last claim (his fifth cause of action) is against the Union. He alleges that the Union's refusal to represent him at an arbitration hearing at which he challenged his discharge violated the Union's duty of fair representation under Section 7 of the NLRA, 29 U.S.C. § 157.

This action was commenced in the Supreme Court of the State of New York, New York County, in January, 1984 and removed to this Court on joint petition of the defendants, in February, 1984. Thereafter, in March, 1984 plaintiff filed a "Notice of Objection to Removal". In his supporting papers, plaintiff argued that since plaintiff's attorney is not admitted to practice in this Court, removal would work an extreme prejudice on plaintiff by denying him the right of representation by counsel of his choice. The Court notified plaintiff's attorney, by way of conference call with all parties, that, assuming he was attempting to make a motion for remand, his papers were procedurally improper. In addition, the Court noted that the mere fact that plaintiff's attorney was not admitted to practice in this Court would not constitute grounds for a remand. Plaintiff thereupon agreed to withdraw his objections, and seek admittance to the Court, at least on a *pro hac vice* basis.

In the meantime, the Library moved for summary judgment on plaintiff's first claim for breach of the collective bargaining agreement, on the ground that the claim is time-barred under the Supreme Court's recent decision in *DelCostello v. IBT,* 462 U.S. 151, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). In addition, the Library moved to dismiss plaintiff's second claim under Section 8 of the NLRA on the ground that the NLRB has sole jurisdiction to adjudicate the unfair labor practice charge, and plaintiff's third claim on the ground that the New York labor law claim is preempted by federal law.

The Union similarly moved for summary judgment on plaintiff's fourth and fifth claims on the ground that those claims, alleging breach of the union's duty of fair representation, are time-barred under *DelCostello*, and for dismissal of the state labor law claim in plaintiff's fourth cause of action, on the ground that it is preempted by federal law. In addition, the Union moved for dismissal of all claims against it, for lack of personal jurisdiction, because of insufficiency of service of process.

Plaintiff submitted a memorandum in opposition to defendants' motions, but failed to submit a counter-statement pursuant to Civil Rule 3(g) of this Court.[2] Plaintiff subsequently requested permission to file an untimely 3(g) statement. Defendants vigorously opposed this request, arguing that under the express terms of Rule 3(g), material facts set forth in the 3(g) statement of a party moving for summary judgment are deemed "admitted unless controverted by the statement required to be served by the opposing party." In addition

---

1. The Complaint sets forth five causes of action. However, plaintiff agreed to withdraw his claims under the New York State Labor Law (his second and fourth causes of action) after defendants moved to dismiss those claims on the grounds that they were preempted by federal law.

2. Rule 3(g) requires a party making a motion for summary judgment to annex "to the notice of motion a separate, short and concise state-ment of the material facts as to which the moving party contends there is no genuine issue to be tried." Such statements were filed by both the Library and Council 37 in support of the pending motions for summary judgment. In addition, Rule 3(g) requires the party opposing a motion for summary judgment to "include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

defendants cite recent Second Circuit authority which supports the argument that the appropriate response to a party's failure to file a counter-statement pursuant to Rule 3(g), is to deem the facts in the movant's 3(g) statement admitted. *See Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984); *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 34 (2d Cir.1978); *Lehman Brothers Kuhn Loeb, Inc. v. Fargason,* No. 80 Civ. 3520, slip op. (S.D.N.Y. January 14, 1981). *Woods v. State of New York,* 469 F.Supp. 1127 (S.D.N.Y.), *aff'd mem.* 614 F.2d 1293 (2d Cir.1979). Plaintiff argues that his failure to comply with Rule 3(g) was due to inadvertence, and should therefore be excused. He relies on Rule 60(b)(1) of the Fed.R.Civ.P. which authorizes a federal district court to vacate a default judgment, when the default was due to "inadvertence." In addition, he points out that courts are generally permitted broad discretion in these matters. Plaintiff argues by analogy that the Court has the discretion to allow him to correct his inadvertent error and file a 3(g) statement, so that a determination on the merits of defendants' motions may be made.

■ In light of the express terms of Rule 3(g) and the cases arising thereunder which have applied the Rule literally, and because plaintiff's attorney can offer no justification for his failure to comply with Rule 3(g) other than lack of familiarity with the rules of this Court, we believe it would be an abuse of discretion for the Court to allow plaintiff to file an untimely 3(g) statement without mutual consent of the parties. Therefore, the facts in the movants' 3(g) statements will be deemed admitted. We note that plaintiff in his memorandum does not appear to be challenging any of the specific facts contained in defendants' 3(g) statements. Rather, he seeks to put forth additional facts which he believes have a bearing on when his claims accrued. As the following discussion will make clear, these additional facts, even if considered, would not effect the outcome of this case. Therefore, plaintiff will suffer no prejudice by reason of the Court's ruling with regard to the 3(g) statement.

### FACTS

The relevant facts are stated in the Library's 3(g) statement as follows:

1. Defendant Library is an employer in an industry affecting commerce within the meaning of Section 301(a) of the Labor Management Relations Act of 1947, as amended (the "LMRA") 29 U.S.C. § 185(a) with offices in the City, County and State of New York.

2. Defendant Union is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301(a) the LMRA with offices in the City, County and State of New York. Local 1930 is a labor organization whose members consist of certain employees of Defendant Library and is affiliated with defendant Union.

3. Defendant Library, Local 1930 and Defendant Union are parties to a collective bargaining agreement effective July 1, 1980 applicable to a bargaining unit of certain professional, clerical and technical employees of Defendant Library.

4. Plaintiff was employed with Defendant Library as a Library Information Assistant, a position within the bargaining unit covered by the collective bargaining agreement.

5. Plaintiff was suspended from employment on July 16, 1982 and was subsequently discharged effective the same day.

6. A disciplinary hearing and appeal hearing concerning plaintiff's suspension and discharge were held in accordance with the disciplinary and grievance procedures of Article VII and VIII of the collective bargaining agreement.

7. The union represented plaintiff at the disciplinary hearing and at an Article VIII, Step 4 appeal hearing as provided in the collective bargaining agreement.

8. A Step 4 determination dated September 24, 1982 was rendered affirming a

recommendation of termination of plaintiff's employment.

9. On or about October 7, 1982, plaintiff requested defendant Union to take an appeal to arbitration from the Step 4 determination.

10. On October 14, 1982, plaintiff received written notice that the Executive Board of Local 1930 had made a determination not to pursue plaintiff's case to arbitration.

11. Article VII Section 6 of the Local union's constitution authorizes the Executive Board to make determinations as to whether the Union should proceed to arbitration with reference to a grievance.

12. Thereafter, plaintiff exercised his right to proceed to arbitration pursuant to the grievance procedure of Article VIII of the collective bargaining agreement.

13. A discharge arbitration hearing at which plaintiff appeared *pro se* was held in April of 1983.

14. On June 6, 1983, the arbitrator made an award sustaining plaintiff's discharge.

15. This action was commenced against defendant Union in the Supreme Court of the State of New York, New York County on January 27, 1984.

16. The action was thereafter removed to this Court pursuant to 28 U.S.C. § 1441.

17. This Court has original jurisdiction over the action.

## DISCUSSION

### Plaintiff's First and Fifth Claims

■ Plaintiff concedes that his first claim against the Library for breach of the collective bargaining agreement, and his fifth claim against the Union for breach of the union's duty of fair representation, when read together, present "a hybrid § 301 fair representation claim," such as that addressed by the Supreme Court in *DelCostello v. IBT,* 462 U.S. 151, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). *DelCostello* held that the six month limitations period applicable, under Subsection 10(b) of the NLRA, to actions based on unfair labor practices, governs both the contractual and duty of fair representation claims. Thus, for plaintiff's first and fifth claims to have been timely, they must have been filed within six months of the date the causes of action accrued.

The Library argues that plaintiffs' claim against it accrued, at the latest, on June 15, 1983 when plaintiff received notice of the arbitrator's award. This action was not commenced until January 27, 1984, more than seven months after that date. The Union argues that plaintiff's claim against it began to run when he received notice of the union's decision not to represent him at the arbitration. The Union claims that plaintiff received such notice in writing on October 14, 1982, over a year before the instant proceeding was commenced. Plaintiff alleges that he did not receive such notice until April 18, 1983. However, even if plaintiff's allegation is assumed to be true, the date of notice was still more than six months prior to the filing of this case.

Plaintiff acknowledges that his first and fifth causes of action are subject to the six month limitations period enunciated in *Del-Costello*. However, he advances three arguments as to why this action is timely. Each of plaintiff's arguments are based on factual allegations not properly before this Court. However, even if these facts are considered, they are not material to statute of limitations issue.

■ Plaintiff first argues that the commencement of an action based on state claims before the New York State Public Employment Relations Board ("PERB") operates to toll the running of the statute of limitations on his § 301 fair representation claim. Plaintiff commenced such an action on October 7, 1983, alleging that the Union committed an improper practice, as defined by the Public Employees' Fair Employment Act ("Act") by refusing to provide representation for plaintiff in the arbitration proceeding. On November 29, 1983 plaintiff's charge was dismissed on the grounds that it was not timely made, and that the

PERB lacked jurisdiction over the dispute since plaintiff's employer, the Library, is not a public employee within the meaning of the Act.

Plaintiff's argument seems to be premised on the assumption that this Court should borrow from state tolling provisions, in determining whether plaintiff's claims are time-barred. Specifically plaintiff relies on § 205(a) of the CPLR which provides that as long as the initial action is timely commenced, plaintiff may commence a new action on the same transaction within six months after the termination of the initial action.

■ The Court finds plaintiff's reliance on state law inappropriate in light of the Supreme Court's holding in *DelCostello* that a federal, rather than state, limitations period governs hybrid § 301 fair representation claims. Particularly in light of the *DelCostello* Court's emphasis on the importance of developing uniform federal limitations rules in these types of cases, we must presume that federal tolling provisions apply as well. *See Association of Frigidaire Model Makers v. General Motors Corp.*, 573 F.Supp. 236, 239 (S.D.Ohio 1983). Federal tolling rules dictate that where a federal remedy is independent of other remedies, and exhaustion of administrative remedies is not a pre-requisite to the federal remedy, the federal statute of limitations will not be tolled by the filing of other actions. *See Weed v. East Texas Motor Freight Lines, Inc.*, 592 F.Supp. 713, 114 L.R.R.M. 3449 (D.C.Tex.1983), citing *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Griffin v. Big Spring Ind. School Dist.*, 706 F.2d 645 (5th Cir.1983); *Harris v. Norfolk & Western Railway, Co.*, 616 F.2d 377 (8th Cir.1980). Thus post-*DelCostello* cases have held that the filing of an unfair labor practice with the NLRB does not toll the limitations period for hybrid 301/fair representation claims. *See Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir.1983) (holding that the six-month limitations period applicable to hybrid 301/fair representation claims under *Del-*

*Costello* is not tolled by the pendency of an unfair labor practice proceeding before the NLRB); *Former Frigidaire Employees Association v. International Union of Electrical Workers*, 573 F.Supp. 59, 61 (S.D.Ohio 1983) (holding that the pendency of a NLRB unfair labor practice charge does not toll the six-month limitations period for hybrid 301/fair representation claims because "the independence of a LMRA § 301 action from any NLRB proceedings undermines any argument that the latter should toll the former"); *Association of Frigidaire Model Makers v. General Motors Corp.*, 573 F.Supp. 236, 239 (S.D.Ohio 1983) (holding that the filing of an unfair labor practice charge does not toll the running of the statute of limitations in a hybrid 301/fair representation action, and explicitly distinguishing the Ninth Circuit decision cited by plaintiff here in support of his tolling argument because it was based upon state tolling rules and not principles of federal labor law); *Weed, supra*, 592 F.Supp. at 719, 114 L.R.R.M. (BNA) at 3453 (holding that "it would be inequitable to hold that the pendency of [NLRB unfair labor practice] proceedings tolled the statute applicable to" a hybrid 301/fair representation action); *Glover v. United Grocers, Inc.*, 115 L.R.R.M. (BNA) 2441, 2442 (D.Or.1983) (holding that "plaintiff's decision to pursue a remedy before the NLRB did not toll the statute of limitations" in a hybrid 301/fair representation suit).

Plaintiff's action before the PERB, like an action before the NLRB, is independent of, and certainly not a prerequisite to his 301/fair representation claims. Therefore, we hold that the filing of the PERB action did not toll the limitations period as to the 301/fair representation claims.

We note further, that even if the Court were to borrow from state tolling provisions, § 205(a) of the CPLR would be inapplicable on the facts of this case. Section 205(a) requires timely commencement of the first action; yet the PERB decision expressly finds that plaintiff's action be-

fore it was untimely. Therefore, § 205(a) does not require tolling of the limitations period on plaintiff's 301/fair representation claims.

Plaintiff next argues that his damage did not accrue, and thus the statute of limitations did not begin to run, until the arbitrator's decision became "final" on July 28, 1983. After the decision was rendered on June 6, 1983, plaintiff made formal objections based on the fact that the arbitrator's decision was not delivered in a timely fashion.[3] Plaintiff claims that "[a]fter subsequent discussion among the parties and the American Arbitration Association, an opportunity for a re-hearing was offered to plaintiff. However, the arbitrator and the parties could not agree to terms for the re-hearing on the matter, and only after such time was the original award made final. Again this date was July 28, 1983." Plaintiff's Memorandum at 4.

Plaintiff's exhibits support his contention that he made efforts to re-open the arbitration proceedings. However, nothing in the exhibits substantiates his allegation that he was offered an opportunity for a re-hearing. In fact, Exhibit I makes clear that the authority of the Arbitrator was never reinstated and the proceedings never re-opened. Thus the June 6 decision of the Arbitrator, which under the terms of the collective bargaining agreement was "final and binding", was never disturbed. Plaintiff cites no support for the proposition that his unsuccessful post-arbitration attempts to re-open the proceeding operated to extend the accrual time of his claims. Therefore, we find plaintiff's breach of contract/duty of fair representation claims accrued, at the latest,[4] on June 15, 1983 when plaintiff admittedly received notice of the Arbitrator's decision.

Plaintiff's continuing violation argument is equally without merit. The specific act which constitutes the alleged unfair labor practice was the Union's determination not to represent plaintiff at the arbitration proceeding. As mentioned above, plaintiff learned of this decision by April 18, 1983 at the latest. Nothing other than Union inactivity is alleged to have occurred since that time. Such inactivity does not, by itself, constitute an unfair labor practice; "[o]nly by reference to other events can the vice in the inactivity be found." *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 306 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *see also Former Frigidaire Employees Assn. v. International Union of Electrical, Radio and Machine Workers,* 573 F.Supp. 59, 62 (J.D.Ohio 1983). It is these underlying events which must have occurred within the six month limitations period. As the Court in *Metz* observed:

> If this court were to permit the cloaking of this inactivity with illegality by invoking events which occurred more than six months prior to the bringing of this action, it would in effect be reviving a legally noncognizable unfair labor practice.

*Id.* Since plaintiff has alleged no events occurring within the six months prior to this action which would "cloak the [Union's] conduct with illegality," plaintiff's first and fifth claims must be dismissed as time-barred.

*Plaintiff's Claim Against the Library under Section 8 of the NLRA*

[5] It is beyond question that the NLRB has exclusive jurisdiction to adjudicate plaintiff's unfair labor practice claim against the Library. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 245, 79 S.Ct. 773, 779, 780, 3 L.Ed.2d

**3.** The Exhibits presented by plaintiff show that prior to the rendering of the Award, the arbitrator had requested an extension of time for making the Award, and plaintiff had objected to such an extension. However, there is some question as to whether the objection was even received by the Arbitrator prior to the issuance of the Award. See Plaintiff's Exhibit I.

**4.** For the purposes of this motion, we need not decide whether plaintiff's claims actually accrued sometime earlier, i.e., at the time he learned that the Union would not represent him or at the time he was discharged.

**594**

775 (1959) (when an activity is arguably protected or prohibited by the NLRA, the state and federal courts "must defer to the exclusive competence of the National Labor Relations Board."); *see Peltzman v. Central Gulf Lines, Inc.*, 497 F.2d 332, 334 (2d Cir.1974), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976) ("[a]ny claim that the company has committed an unfair labor practice in discharging [appellant] would plainly be subject to the exclusive jurisdiction of the NLRB"); *Buckley v. AFTRA*, 496 F.2d 305, 312 (2d Cir.1974), *reh. denied*, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1975) (to the same effect). Plaintiff has already litigated an unfair labor practice claim arising out of his discharge from the Library before the NLRB. Southon *Aff.*, Exhibit D. After investigating plaintiff's claim, the Regional Director found that "[t]he evidence adduced in the investigation fails to establish that the (Library) violated the National Labor Relations Act." Southon *Aff.*, Exhibit E, at 1. Thereafter, the Office of the General Counsel twice rejected plaintiff's appeal from this determination. Southon *Aff.*, Exhibits F, G. Clearly, this Court has no jurisdiction to review the decision of the NLRB. *See Peltzman v. Central Gulf Lines, Inc.*, *supra.*

■ The Court recognizes that Section 301 of the NLRA creates an exception to the *Garmon* preemption doctrine to the extent that the arguably protected or prohibited activity is alleged to violate a collective bargaining agreement. Hybrid § 301/fair representation claims such as that made by plaintiff in his first and fifth causes of action, fall within this exception. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Amalgamated Association of Street Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). However, plaintiff's third cause of action against the Library, arising under Section 8 of the NLRA, does not appear to allege a breach of the collective bargaining agreement. Further, to the extent it does, it is duplicative of plaintiff's first cause of action, and time-barred under *DelCostello*.

In light of the foregoing, plaintiff's third cause of action must be dismissed for lack of subject matter jurisdiction.

### CONCLUSION

The Court hereby grants summary judgment in favor of the defendants on plaintiff's first and fifth causes of action on the ground that those claims are time barred. In addition, the Court dismisses plaintiff's third cause of action for lack of subject matter jurisdiction. Plaintiff has conceded that this Court lacks jurisdiction over his second and fourth causes of action. Therefore, judgment should be entered on all counts in favor of the defendants.[5]

It Is So Ordered.

---

**5.** In light of our dismissal of all claims against the Union we need not address the issue of whether the Union was properly served in this action.